UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

---

ERIC BERTHIAUME,

                                        Plaintiff,


v.                                                                    Case No.   3:19cv331

VIRGINIA DEPARTMENT OF HEALTH,
SERVE:     The Honorable Mark R. Herring
                Attorney General of the Commonwealth of Virginia          DEMAND FOR JURY TRIAL
                Office of the Attorney General
                202 North Ninth Street
                Richmond, VA 23219
                                        Defendant.

---

**COMPLAINT**

TABLE OF CONTENTS

I.      SUMMARY OF ACTION ........................................................................................... 1

II.     JURISDICTION AND VENUE ................................................................................. 2

III.    INTRADISTRICT ASSIGNMENT ........................................................................... 2

IV.     PARTIES .................................................................................................................... 2

        A.      PLAINTIFF ................................................................................................... 2

        B.      DEFENDANT ............................................................................................... 3

V.      EXHAUSTION OF ADMINISTRATIVE REMEDIES ........................................... 4

VI.     FACTS ........................................................................................................................ 5

        A.      BERTHIAUME'S DISABILITY .................................................................. 5

        B.      BERTHIAUME REPEATEDLY REQUESTS ACCOMMODATIONS ................. 6

        C.      VDH REPEATEDLY FAILS TO ACCOMMODATE BERTHIAUME ................. 8

        D.      THE 2016 ACTION AND SUBSEQUENT REMOVED

                ACCOMMODATION ..................................................................................... 13

        E.      VDH CONTINUES TO FAIL TO ACCOMMODATE BERTHIAUME ............. 15

VII.    CLAIMS ..................................................................................................................... 18

        COUNT ONE: DISABILITY DISCRIMINATION / FAILURE TO ACCOMMODATE

        (VIOLATIONS OF SECTION 504(a) OF THE REHABILITATION ACT OF 1973) .... 18

        COUNT TWO: DISABILITY DISCRIMINATION / FAILURE TO ACCOMMODATE

        (VIOLATIONS OF THE ADA) ..................................................................................... 20

VIII.   DAMAGES ................................................................................................................. 21

PRAYER FOR RELIEF ........................................................................................................ 21

DEMAND FOR JURY TRIAL .............................................................................................. 23

## I.    SUMMARY OF ACTION

1.    Plaintiff Eric Berthiaume brings this action against the Virginia Department of Health ("VDH") to remedy employment discrimination against him on the basis of his disability (cerebral palsy), for failing to accommodate his disability, and discriminating against him because of his disability, in violation of the Americans with Disabilities Act, as amended, 42 U.S.C. §§ 12101, et seq. and Section 504(a) of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a).

2.    In short, due to his disability, Berthiaume struggles with fine motor skills and requires the aid of a walker to walk short distances. This makes it difficult and embarrassing for him to attempt to (A) carry large stacks of paper files and (B) assemble paper files into bradded binders by hand, both of which are marginal tasks assigned to him by VDH. Despite his repeated requests for accommodation, as well as two EEOC charges and a prior lawsuit, VDH has failed to provide a reasonable, reliable accommodation for his disability.

3.    Plaintiff seeks compensatory damages, declaratory judgment, injunctive relief, and costs and attorney's fees to redress unlawful and ongoing discriminatory practices during his employment, all done in violation of Section 504(a) of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a) (the "Rehabilitation Act").

4.    Plaintiff seeks declaratory judgment, injunctive relief, and costs and attorney's fees to redress unlawful and ongoing discriminatory practices, all done in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. ("ADA").

## II.     JURISDICTION AND VENUE

5.     The Court has jurisdiction over this action pursuant to Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12117(a), and 28 U.S.C. §§ 1331 and 1343.

6.     The ADA claim, requesting injunctive, declaratory and ancillary relief under *Ex parte Young*, 209 U.S. 123 (1908), is outside the scope of immunity afforded to the Commonwealth of Virginia by the Eleventh Amendment to the U.S. Constitution.[1]

7.     Venue is proper in this judicial district under 28 U.S.C. § 1391. Berthiaume is employed by VDH in this judicial district, and a substantial part of the events or omissions giving rise to his claims occurred in this judicial district.

## III.     INTRADISTRICT ASSIGNMENT

8.     Venue is proper in the Richmond Division under Local Civil Rule 3(C) because VDH employs Berthiaume in this division, and a substantial part of the events or omissions that gave rise to this action occurred in this division.

## IV.     PARTIES

## A.     PLAINTIFF

9.     Plaintiff Eric Berthiaume is a resident of Virginia and citizen of the United States. In September 2013, VDH hired Berthiaume to work in a senior secretary position in its Office of Licensure and Certification. Currently, Berthiaume is working as a senior secretary for VDH in its Division of Acute Care Services. At the time of his hire, Berthiaume had 13 years of administrative support experience. He has both a bachelor's degree and a master's degree in business administration.

---

[1] Although protection under the Eleventh Amendment is frequently referred to as immunity, it is actually a limitation on federal court jurisdiction. *See Constantine v. Rectors & Visitors of the George Mason Univ.*, 411 F.3d 474, 480-81 (4th Cir. 2005).

10.    At all times relevant to the matters alleged herein, Berthiaume has been an employee within the meaning of the ADA pursuant to 42 U.S.C. § 12111(4).

11.    At all times relevant to this Complaint, Berthiaume was a qualified individual with a disability within the meaning of the Rehabilitation Act and the ADA.

12.    The essential functions of Berthiaume's senior secretary position entail acting as a front line / customer service resource for VDH's internal and external customers, answering phone calls and responding to emails, computer data entry, processing inspection packages, and processing licenses for various health care providers.

13.    Berthiaume has been employed with VDH from September 2013 to the present.

**B.    DEFENDANT**

14.    Defendant Virginia Department of Health ("VDH") is an executive department of the Commonwealth of Virginia, established for "the protection, improvement and preservation of the public health . . . of the Citizens of the Commonwealth," pursuant to Virginia Code § 32.1-1, et seq.

15.    VDH is part of the government of the Commonwealth of Virginia or a political subdivision of the Commonwealth of Virginia.

16.    VDH has been engaged in an industry affecting commerce and has had 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year within the meaning of the ADA.

17.    VDH is an employer within the meaning of the ADA.

18.    VDH is an entity that receives federal funds.

19.    VDH is a "program or activity" within the meaning of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a).

20.    VDH is a "program or activity receiving Federal financial assistance" within the meaning the Rehabilitation Act of 1973, 29 U.S.C. § 794(a).

21.    VDH has had more than 500 employees in each of 20 or more calendar weeks in the current or preceding calendar year.

22.    VDH has had more than 200 and fewer than 501 employees in each of twenty or more calendar weeks in the current or preceding calendar year.

23.    VDH has had more than 100 and fewer than 201 employees in each of twenty or more calendar weeks in the current or preceding calendar year.

24.    VDH has had more than 14 and fewer than 101 employees in each of twenty or more calendar weeks in the current or preceding calendar year.

25.    VDH has employed Berthiaume from September 2013 to the present.

26.    At all relevant times, VDH acted by and through its agents, servants and employees, each of whom acted at all times relevant in the course and scope of their employment with VDH.

## V.    EXHAUSTION OF ADMINISTRATIVE REMEDIES

27.    Berthiaume exhausted his administrative remedies by filing a charge of discrimination with the U.S. Equal Employment Opportunity Commission on or about February 1, 2018, alleging that VDH unlawfully failed to accommodate his disabilities, discriminated against him because of his disabilities, and/or retaliated against him for engaging in protected activity, in violation of the Americans with Disabilities Act. The charge was assigned charge number of 438-2018-00444 (the "Charge").

28.    The EEOC issued a Notice of Suit Rights as to the Charge on February 5, 2019, and Berthiaume received the Notice of Suit Rights fewer than 90 days before the filing

of this Complaint. A copy of the Notice of Suit Rights is attached as Exhibit 1.

29.    Berthiaume's ADA claim is therefore timely filed.

30.    This action is filed within one year of the discriminatory acts by VDH, and within one year of the continuation of ongoing discriminatory acts by VDH, for which damages are sought pursuant to the Rehabilitation Act.

**VI.    FACTS**

**A.    BERTHIAUME'S DISABILITY**

31.    Berthiaume has cerebral palsy.

32.    Cerebral palsy is a disability for the purposes of the ADA and Rehabilitation Act.

33.    Cerebral palsy is caused by abnormal development or damage to the parts of the brain that control movement, balance, and posture.

34.    Cerebral palsy is chronic and permanent and has no cure.

35.    Cerebral palsy is defined as a group of permanent disorders of the development of movement and posture, causing activity limitation, that are attributed to non-progressive disturbances that occurred in the developing fetal or infant brain.[2]

36.    Berthiaume's cerebral palsy substantially impairs Berthiaume's ability to perform major life activities, such as walking, lifting or carrying items, performing manual tasks, especially tasks involving fine motor skills, and moving, and substantially

---

[2] Rosenbaum, P; Paneth, N; Leviton, A; Goldstein, M; Bax, M; Damiano, D; Dan, B; Jacobsson, B (2007). A report: The definition and classification of cerebral palsy April 2006. Developmental Medicine & Child Neurology Supplement. 109: 8–14. doi:10.1111/j.1469-8749.2007.tb12610.x. PMID 17370477.; Corrected in Rosenbaum, P; Paneth, N; Leviton, A; Goldstein, M; Bax, M; Damiano, D; Dan, B; Jacobsson, B (2007). A report: The definition and classification of cerebral palsy April 2006. Developmental Medicine & Child Neurology. 49: 480. doi:10.1111/j.1469-8749.2007.00480.x.

impairs Berthiaume's musculoskeletal and neurological body systems.

37.    Berthiaume uses a walker which enables him to walk short distances.

38.    Berthiaume has difficulty climbing stairs.

39.    Berthiaume has difficulty lifting heavy objects.

40.    Berthiaume has difficulty carrying large stacks of paper files.

41.    Berthiaume has difficulty with fine motor functions.

42.    Berthiaume has difficultly assembling paper files into bradded binders.

43.    Berthiaume has difficulty sorting paper files.

44.    Berthiaume has difficulty disassembling and reassembling bradded binders of
paper files.

45.    Berthiaume is an individual with a disability.

46.    Berthiaume is qualified to do his job as a senior secretary.

47.    VDH has been aware of Berthiaume's cerebral palsy from the beginning of his
employment because, among other reasons, Berthiaume conspicuously uses a walker
and requested accommodation for this disability shortly after being hired in September
2013.

**B.    BERTHIAUME REPEATEDLY REQUESTS ACCOMMODATIONS**

48.    In September 2013, VDH hired Berthiaume to work in a senior secretary
position in its Office of Licensure and Certification. Currently, Berthiaume is still
working as a senior secretary for VDH, now in its Division of Acute Care Services.

49.    Berthiaume's position with VDH is an administrative support position. The
functions of Berthiaume's senior secretary position entail acting as a front line /
customer service resource for VDH's internal and external customers, answering phone

6

calls and responding to emails, computer data entry, scanning files, processing

inspection packages, and processing licenses for various health care providers.

50.    Berthiaume has also at times been given the tasks of "Filing and File

Management" or "File Maintenance" and "FOIA Requests" (together or separately,

these job components involve the "Paper Filing Task" described herein). The Paper

Filing Task involves (A) retrieving and carrying large stacks of paper files; and (B)

disassembling the large paper files stored in bradded binders, punching holes, sorting

and adding new loose leaf documents to the file, and reassembling the paper files into

the bradded binders.

51.    Prior to being transferred to the Division of Acute Care Services, Berthiaume's

Employee Work Profile divided his job duties into five (5) components as follows, with

the percentage of time expected of each component:

| | Component | Percentage |
|---|---|---|
| a. | Unit Correspondence and Reports | 15% |
| b. | Distribution of Documents and Data Entry | 35% |
| c. | Telephone Management | 15% |
| d. | Filing and File Management | 25% |
| e. | Licenses | 10% |
| | Total | 100% |

52.    When he interviewed for the position, Berthiaume was not informed that the

Filing and File Management component required physically retrieving and returning

large, bulky files between the file room and his cubicle. Nor was Berthiaume informed

that this component also involved assembling and disassembling large stacks of paper

into bradded binders. Had he known this, Berthiaume would have declined the position or requested accommodations before starting, as he is not physically capable of carrying the bulky files and attempting to assemble the papers into bradded binders is extremely difficult, time consuming, and embarrassing for him, due to his disability.

53.    Instead, Berthiaume learned of the physical requirements of the job only after commencing work, and he requested an accommodation within the first month of working in order to assist him in retrieving and returning the files.

**C.    VDH REPEATEDLY FAILS TO ACCOMMODATE BERTHIAUME**

54.    VDH has at various times assigned employees the task of physically moving the files to and from the file room and Berthiaume's desk. Due, however, to extended employee absences, lack of communication on the part of VDH, and the work load of other employees, Berthiaume has not received the files he needs to perform his job, or had the files returned, on a consistent and timely basis.

55.    In or about September 2014, Berthiaume's then-supervisor, Kathy Creegan Tedeschi, indicated she was dissatisfied with Berthiaume's production speed in disassembling and assembling the paper files by hand (i.e. the "Paper Filing Task"). Berthiaume explained that on account of the impairment to his fine motor skills, it takes him longer to accomplish the Paper Filing Task than it would an individual who is not similarly disabled.

56.    Creegan Tedeschi said she could not understand why Berthiaume was slower. This response was curious since the manifestation of Berthiaume's cerebral palsy makes it obvious that his disability slows the pace in which he can perform physical tasks. When Berthiaume responded that he would try harder to get the work done more

8

quickly, Creegan Tedeschi replied that "trying was not acceptable because it did not get the work done."

57.     In or about October 2014, Berthiaume proposed restructuring his job duties to retain functions he could perform consistent with his disabilities, while removing those components that required physically carrying and moving bulky files that he was incapable of doing, and tasks that required quicker turnaround times than his fine motor skills limitations allowed him to accomplish. Specifically, referring to his then-job components identified above, he proposed assuming from the other administrative support staffer with whom he shared tasks all of tasks b (Distribution of Documents and Data Entry) and c (Telephone Management), who in turn would take over items a, d and e. The restructured job components for each support employee would total 100%, ensuring an identical work load.

58.     In January 2015, Berthiaume provided VDH with a note from his physician describing his disability and explaining how it limited his production speed. In response, Creegan Tedeschi requested that a Worksite Assessment be performed by the Virginia Department of Aging and Rehabilitative Services ("VDARS"). A representative of VDARS came to Berthiaume's jobsite on January 27 and February 4 and 5, 2015 to observe his work and discuss his performance situation with him and his supervisor.

59.     On February 6, 2015, Berthiaume's supervisor issued him a Notice of Improvement Needed / Substandard Performance ("Improvement Plan"). The basis for the discipline was Berthiaume's production speed in performing the Filing Task — the same subject matter as contained in his physician's note and the VDARS Worksite Assessment.

9

60.     Creegan Tedeschi ignored the physician's note altogether, and issued the disciplinary action the next day following the VDARS site visit. The Improvement Plan set out specific deadlines for completion of the Paper Filing Task. The Improvement Plan had no reference to or consideration of the recommendation of Berthiaume's physician. Issuance of the Improvement Plan was not delayed to wait for the findings or recommendation of the soon-to-be issued VDARS Worksite Assessment Report.

61.     Upon receipt of the written notice and Improvement Plan, Berthiaume wrote to his supervisor that he would continue to perform to the best of his ability, but recommended that VDH wait for the recommendations of the VDARS Worksite Assessment Report before any discipline was put into place. Creegan Tedeschi refused his request and insisted on going forward with the written notice and Improvement Plan without any consideration for Berthiaume's disability and the suggested accommodation requested by his physician.

62.     On or about February 11, 2015, Berthiaume received the VDARS Worksite Assessment Report and forwarded a copy of it to VDH. The Assessment indicated that Berthiaume adequately performed the scanning, data entry, and telephone aspects of his job, but indicated that his fine motor limitations contributed to him being slower than most people who do similar physical paper file processing work (i.e. the Paper Filing Task). The Report concluded

> Recommendations for accommodation other than full restructuring of the position, or a personnel transfer to a Receptionist or Data Entry position will likely not impact Mr. Berthiaume's performance and work speed sufficiently to meet performance expectations outlined in his current Employee Work Profile.

63.     Upon receipt of the Report, VDH continued to ignore the recommendations and

requests of Berthiaume's physician, and instead further disciplined him by issuing a negative Probationary Progress Review and Probation Period Extension ("Probation Extension") on February 27, 2015. The Review once again set strict deadlines for his production speed without regard to Berthiaume's disability or requested accommodations. Creegan Tedeschi later rescinded the Probationary Progress Review, but despite repeated requests, neither the Review nor the Improvement Plan have been removed from Mr. Berthiaume's personnel file.

64.    On or about March 10, 2015, Berthiaume provided VDH another note from his physician explaining in detail the nature of his disability and the adverse effects on his fine motor skills and paper file processing production speed. The physician's note indicated that the most helpful job accommodation would be to provide Berthiaume more time to complete the paper file processing job duties and that "[t]o the extent the filing is time sensitive and more time to complete the work is not possible, the best accommodation may be a job restructuring where the filing duties are shifted to another employee . . . ." The note further indicated that the most beneficial accommodation would be a transfer to another job that did not require fine motor skills necessary for breaking down and re-assembling the large paper files.

65.    VDH chose to again ignore the note from Berthiaume's physician and his request for accommodation.

66.    On or about April 20, 2015, Creegan Tedeschi met with Berthiaume and two co-workers. She spent the entire meeting berating Berthiaume for his slow paper file processing and falling behind, and otherwise discussing items that should have been handled between her and Berthiaume outside the presence of his co-workers.

In October 2015, Berthiaume received an annual performance evaluation rating of "below contributor," based on the same issues regarding his speed of processing paper files that had been subject of his physicians' notes, accommodation requests and VDARS Assessment. In response, in November 2015, Berthiaume again requested more time within which to complete his file processing job duties, but was again denied this reasonable accommodation request.

67.    In late 2015, Berthiaume requested that piles of papers files that were being stored in his cubicle be moved to an empty cubicle so that he could have sufficient room to safely move about in the cubicle. This request was met by Creegan Tedeschi angrily confronting him in the presence of co-workers about moving the files. Creegan Tedeschi consistently acted in an unprofessional manner towards Berthiaume and openly showed her disdain for him and his accommodation requests.

68.    In May 2016, Berthiaume was assigned to scan and copy all working papers concerning a nursing home facility as part of a federal review. Berthiaume requested assistance because he had never done this work before, but instead was assigned to a temporary employee. This request was denied, and Berthiaume completed the task. Both Creegan Tedeschi and another supervisor informed Berthiaume that he had done a good job. Nonetheless, the following month, Creegan Tedeschi informed him that his work was "useless."

69.    In August 2016, the temp who had been assisting Mr. Berthiaume left VDH to assume another position. This left him with no help, causing him to fall further behind in the speed in which he processed paper files. Each time he asked Ms. Creegan Tedeschi for a replacement temp, he was told there was not room in the budget to hire another

one, even though the former temp did not leave for budgetary reasons.

70.     In October 2016, Berthiaume asked if he could come in on Saturdays to catch up on his work. Creegan Tedeschi refused this request, saying he could not be in the building during weekends alone, despite the fact that other employees are permitted entry into the building on weekends.

71.     Throughout 2014 and 2016, previous counsel for Berthiaume provided VDH with potential job restructuring ideas and options to transfer him to open positions within VDH and other state agencies. In every instance, VDH refused to restructure Berthiaume's job and refused to transfer him to open positions for which he is qualified within VDH and other state agencies.

**D.    THE 2016 ACTION AND SUBSEQUENT REMOVED ACCOMMODATION**

72.     In December 2016, Berthiaume filed suit in this Court against VDH for violations of the ADA based on the above facts. The case was assigned Case No. 3:16-CV-00968 (the "2016 Action").

73.     After Berthiaume filed the 2016 Action, and while that action was pending, VDH offered to transfer Berthiaume to the senior secretary position he currently holds with the Division of Acute Care Services.

74.     The purpose of the transfer to the Division of Acute Care Services, as Berthiaume understood it, was to comply with his physician's recommendation and his repeated accommodation request that the Paper Filing Task be removed from his job duties, assigned to other employees who could easily perform this marginal task, and replaced with additional tasks that Berthiaume could perform independently. Based on

13

this understanding, Berthiaume therefore voluntarily dismissed the 2016 Action. The action was dismissed on September 21, 2017. On or about September 29, 2017, Berthiaume was transferred to the Division of Acute Care Services into the senior secretary position he currently holds.

75.     Consistent with the purpose of Berthiaume's transfer to the Division of Acute Care Services, on September 29, 2017, Berthiaume received a new Employee Work Profile that <u>completely removed</u> the Paper Filing Task (i.e. File Maintenance and FOIA Requests) from his job duties. Upon being transferred to the Division of Acute Care Services, Berthiaume's September 29, 2017 Employee Work Profile therefore divided his job duties as follows, with the percentage of time expected of each component:

| | Component | Percentage |
|---|---|---|
| a. | Front Line Resource / Customer Service | 40% |
| b. | Processing Inspection Packages | 20% |
| c. | Licensure Process | 40% |
| d. | File Maintenance | 0% |
| e. | FOIA Requests | 0% |
| | Total | 100% |

76.     With his job duties restructured in this manner, and the Paper Filing Task eliminated and replaced with additional duties, Berthiaume was able to perform all functions and tasks of his position capably and independently.

77.     Then, with the 2016 Action dismissed, on October 11, 2017 VDH issued Berthiaume a replacement Employee Work Profile that added the Paper Filing Task (i.e. File Maintenance and FOIA Requests) back into his job description. The October 11,

14

2017 Employee Work Profile cancelled the accommodation provided by the transfer and September 29 Employee Work Profile, and divided Berthiaume's job duties as follows, with the percentage of time expected of each component:

|   | Component | Percentage |
|---|-----------|------------|
| a. | Front Line Resource / Customer Service | 30% |
| b. | Processing Inspection Packages | 20% |
| c. | Licensure Process | 30% |
| d. | File Maintenance | 10% |
| e. | FOIA Requests | 10% |
|   | Total | 100% |

78.    VDH then instructed Berthiaume to back-date the new Employee Work Profile, giving it the same date as the Employee Work Profile that had accommodated Berthiaume.

79.    In other words, Berthiaume dismissed the 2016 Action upon being offered an accommodation; then VDH cancelled the accommodation.

**E.    VDH CONTINUES TO FAIL TO ACCOMMODATE BERTHIAUME**

80.    As a result, Berthiaume was placed back in the same position he had been in prior to filing the 2016 Action — being assigned a marginal Paper Filing Task that causes him great difficulty and embarrassment and which could much more easily be performed by other employees without disabilities, with Berthiaume taking on additional job duties that he can perform independently.

81.    Since Berthiaume's transfer to the Division of Acute Care Services in 2017, VDH has at various times assigned employees the task of physically moving the files to

15

and from the file room and Berthiaume's desk. Due, however, to extended employee absences, lack of communication on the part of VDH, and the work load of other employees, Berthiaume has not received the files he needs to perform his job, or had the files returned, on a consistent and timely basis.

82.    On or about March 4, 2019, consistent with his physician's recommendations, Berthiaume submitted through counsel yet another request that the marginal Paper Filing Task be removed from his list of job duties, assigned to other employees who could much more easily perform that task, and replaced with additional tasks that Berthiaume can perform independently. Many of the additional tasks that Berthiaume proposed he was already performing at the instruction of his supervisors, although these additional tasks were not yet reflected in his Employee Work Profile.

83.    Shortly after Berthiaume submitted the March 4 accommodation request, on or about March 11, 2019, VDH terminated the employee who had been sometimes assisting Berthiaume, leaving Berthiaume with no accommodation and no one to even assist in carrying the bulky paper files to and from the file room and his desk.

84.    On or about April 25, 2019, VDH verbally informed Berthiaume that his March 4 accommodation request was denied.

85.    VDH further vaguely indicated to Berthiaume that it might, at some unspecified point in the future, hire a part-time employee to assist Berthiaume. But VDH declined to make any commitments to Berthiaume about the timing, nature, or the specifics of any proposed accommodation for his cerebral palsy.

86.    As of the drafting of this action, VDH is not providing Berthiaume with any reliable accommodation for his disability.

87.    As of the drafting of this action, Berthiaume has no one to assist him with carrying the bulky paper files or performing the Paper Filing Task, and (despite years of repeated requests) no accommodation for his disability, and no timetable for receiving an accommodation in the future.

88.    VDH could have reasonably accommodated Berthiaume's disability by granting his accommodation requests without incurring any undue hardship. Indeed, it already granted the request to remove the Paper Filing Task, only to turn around and cancel that accommodation. VDH could also assign an employee to consistently assist Berthiaume with carrying the bulky files and performing with the Paper Filing Task. There would have been no significant monetary cost to VDH in granting the accommodations Berthiaume requested.

89.    VDH can reasonably accommodate Berthiaume's disability by granting the requested accommodations without incurring any undue hardship. There would be no significant monetary cost to VDH in granting the accommodations Berthiaume requested.

90.    Given VDH's ongoing failure to provide Berthiaume with a consistent, timely, or reliable accommodation, Berthiaume asks that the specifics of any future accommodation be memorialized in a writing signed by a representative of VDH with the power to ensure the accommodations are implemented on a consistent and timely basis.

91.    VDH has failed to provide reasonable, reliable accommodations for Berthiaume's disability.

92.    The aforesaid actions by Defendant constitute willful violations of the ADA and

Section 504(a) of the Rehabilitation Act.

93.    Defendant's violations of the ADA and the Rehabilitation Act — including the

failure to provide Berthiaume a reasonable accommodation on a consistent and timely

basis — are ongoing.

94.    As a result of the foregoing, Plaintiff has suffered damages.

95.    Headings used herein are for organization purposes only and should not be

construed as limiting the scope of any claims.

**VII.    CLAIMS**

**COUNT ONE: DISABILITY DISCRIMINATION / FAILURE TO
ACCOMMODATE (VIOLATIONS OF SECTION 504(a) OF THE
REHABILITATION ACT OF 1973)**

96.    The foregoing paragraphs are incorporated herein as if set forth in full.

97.    Defendant VDH has received and continues to receive federal financial

assistance and has thus waived Eleventh Amendment immunity for private damages

actions against State entities.

98.    VDH is an employer pursuant to the Rehabilitation Act of 1973.

99.    Berthiaume has cerebral palsy. Cerebral palsy is a disability. At all times

relevant, Berthiaume is and has been a qualified individual with a disability as those

terms are defined by the Rehabilitation Act.

100.    At all times relevant, VDH had notice of Berthiaume's disability and its

attendant limitations, including that Berthiaume's cerebral palsy made it extremely

difficult for him to carry large stacks of paper files or perform the Paper Filing Task and

similar tasks involving fine motor skills.

101.    Berthiaume was and is able to perform the essential functions of his job with

reasonable accommodations. For example, Berthiaume could perform these functions with reasonable accommodations that (1) removed the marginal Paper Filing Task from his list of job duties, assigned that task to other employees who can perform it much more easily, and replaced this task with additional job duties that Berthiaume can perform independently, or (2) provided an employee to consistently assist Berthiaume with carrying the bulky files and performing the Paper Filing Task and similar tasks involving fine motor functions when necessary.

102.    Berthiaume has asked VDH for these accommodations of his disabilities, and VDH has continuously failed to provide them on any consistent and timely basis. As of the filing of this action, VDH is still failing to provide these accommodations.

103.    VDH could have reasonably accommodated Berthiaume's disability by granting these requests without incurring any undue hardship. There would have been no significant monetary cost to VDH in granting the accommodations Berthiaume requested.

104.    VDH failed to provide such reasonable accommodations for Berthiaume's disability.

105.    The aforesaid actions by Defendant constitute willful violations of Section 504(a) of the Rehabilitation Act of 1973.

106.    Defendant's violations of the Rehabilitation Act — including the failure to provide Berthiaume a reasonable accommodation on a consistent and timely basis — are ongoing.

107.    As a result of the foregoing, Plaintiff has suffered damages.

**COUNT TWO: DISABILITY DISCRIMINATION / FAILURE TO ACCOMMODATE (VIOLATIONS OF THE ADA)**

108.    The foregoing paragraphs are incorporated herein as if set forth in full.

109.    Berthiaume has cerebral palsy. Cerebral palsy is a disability. At all times relevant, this disability rendered him a qualified individual with a disability under the ADA.

110.    At all times relevant, VDH had notice of Berthiaume's disability and its attendant limitations, including that Berthiaume's cerebral palsy made it extremely difficult for him to carry large stacks of paper files or perform the Paper Filing Task and similar tasks involving fine motor skills.

111.    Berthiaume was and is able to perform the essential functions of his job with reasonable accommodations. For example, Berthiaume could perform these functions with reasonable accommodations that (1) removed the marginal Paper Filing Task from his list of job duties, assigned that task to other employees who can perform it much more easily, and replaced this task with additional job duties that Berthiaume can perform independently, or (2) provided an employee to consistently assist Berthiaume with carrying the bulky files and performing the Paper Filing Task and similar tasks involving fine motor functions when necessary.

112.    Berthiaume has asked VDH for these accommodations of his disabilities, and VDH has continuously failed to provide them on a consistent and timely basis. As of the filing of this action, VDH is still failing to provide these accommodations.

113.    VDH could have reasonably accommodated Berthiaume's disability by granting these requests without incurring any undue hardship. There would have been no

significant monetary cost to VDH in granting the accommodations Berthiaume requested.

114.    VDH failed to provide such reasonable accommodations for Berthiaume's disability.

115.    The aforesaid actions by Defendant constitute willful violations of the ADA.

116.    Defendant's violations of the ADA —  including the failure to provide Berthiaume a reasonable accommodation on a consistent and timely basis — are ongoing.

117.    As a result of the foregoing, Plaintiff has suffered damages.

## VIII.   DAMAGES

118.    As a result of VDH's failure to accommodate, discrimination, and other unlawful actions described herein, Berthiaume has suffered emotional distress and mental anguish, curtailment of career opportunities, personal and professional humiliation, and other damages.

## PRAYER FOR RELIEF

119.    Accordingly, Plaintiff prays for judgment in his favor and against Defendant:

A.    Awarding Plaintiff all legal and equitable relief allowed by law;

B.    Declaring that Defendant violated the Rehabilitation Act of 1973 and the Americans with Disabilities Act by failing to accommodate Plaintiff's disability, discriminating against Plaintiff because of his disability, and/or retaliating against Plaintiff for engaging in protected activity;

C.     Awarding Plaintiff declarative relief acknowledging that he has rights under the Rehabilitation Act and the Americans with Disabilities Act that have

been consistently, repeatedly and continuously violated by the actions of VDH, as described herein.

D.    Awarding Plaintiff injunctive relief consisting of an order prohibiting VDH from engaging in further employment practices that create or tolerate a hostile or discriminatory or retaliatory work environment.

E.    Awarding Plaintiff injunctive relief consisting of an order requiring VDH to implement the reasonable accommodations requested by Plaintiff and described herein, including restructuring of job duties and/or consistent and reliable assistance from designated employees;

F.    Awarding Plaintiff injunctive relief consisting of an order requiring VDH to engage in a substantive interactive process to determine reasonable accommodations that would permit him to perform the duties of his job adequately and expeditiously, including possible restructuring of such job duties, and/or transferring him to a vacant position within the VDH or another department or agency of the Commonwealth of Virginia.

G.    Awarding Plaintiff injunctive relief consisting of an order requiring VDH to memorialize any future accommodations or offers of accommodations in a detailed writing, with specifics as to the timing, nature, and availability of such accommodations, delivered to Plaintiff and signed by an authorized agent of VDH with the power to implement such accommodations in a consistent and timely manner;

H.    Awarding Plaintiff compensatory damages, including incidental and consequential damages, in an amount to be proven at trial, plus interest thereon;

I.      Awarding Plaintiff the costs of bringing and maintaining this civil action

and the investigation that preceded it, including reasonable attorneys' fees,

expert witness fees, and costs;

J.      Awarding Plaintiff pre and post-judgment interest;

K.      Enjoining Defendant from discriminating or retaliating against Plaintiff

in the future;

L.      Awarding Plaintiff such other and further relief as the interests of justice

may require.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a jury trial

for all claims and issues so triable.

Respectfully submitted,

ERIC BERTHIAUME,
By Counsel

Dated:          May 3, 2019

/s/Timothy Coffield
Timothy Coffield (VSB 83430)
COFFIELD PLC
106-F Melbourne Park Circle
Charlottesville, VA 22901
p: (434) 218-3133
f:  (434) 321-1636
tc@coffieldlaw.com

Counsel for Plaintiff

23

**CERTIFICATE**

I HEREBY CERTIFY that a true and correct copy of the foregoing Complaint will be delivered to a qualified process server with instructions to serve the same upon the Defendant or its authorized agents at the following address:

> VIRGINIA DEPARTMENT OF HEALTH
> SERVE: The Honorable Mark R. Herring
> Attorney General of the Commonwealth of Virginia
> Office of the Attorney General
> 202 North Ninth Street
> Richmond, VA 23219

/s/Timothy Coffield
Counsel for Plaintiff